**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**DEBORAH LAUFER,**
      **Plaintiff,**

**v.**                                  **Case No:** 1:20-cv-00366-LJV

**FIRST STREET GROUP, LLC,**
      **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff, by and through undersigned counsel, hereby submits this Memorandum in Opposition To Defendant's Motion To Dismiss, filed at DE 4.

**I.**     **Introduction**

Plaintiff, is a disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or cane to ambulate and is vision impaired. Laufer Affid., Exhibit A hereto, para. 1. Plaintiff is a resident of Florida. Id. at 1. However, Plaintiff formerly resided in New York, has family there and frequently visits them and stays in a hotel. Id. at 5. However, in the past, Plaintiff encountered frustration when attempting to book rooms at a hotel because so few online reservations systems fail to identify or allow for booking of accessible rooms and provide little or no information about whether the features at the hotel are accessible. In many instances, website claims of "accessibility" prove to be untrue when she arrives at the hotel. Id. para. 3. As a result, Plaintiff considers a "tester" for the purpose of bringing hotel online reservations systems into compliance with the law. Id.

Defendant books rooms for its hotel, Giacomo Niagara Falls, through various online reservations websites, including Expedia, Booking.com, Hotels.com and Orbitz. (Hereinafter

1

"websites", "online reservations systems" or "ORS".) Id. at 6. The purpose of this ORS is so that Defendant can reach out and market to persons all over the country and in their own homes  to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible.

On three different occasions prior to the filing of this lawsuit, Plaintiff reviewed the online reservations system for Defendant's hotel, Giacomo Niagara Falls and found that it did not comply with the Regulation in any respect. Laufer Affid., at 6.  Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA as well as a State law claim. Plaintiff also has a system to ensure that she properly maintains standing. Id. at 8. She maintains a list of all hotels she has sued over ORS violations. She goes through and maintains this list constantly. With respect to each hotel she sues or has sued, she revisits the hotel's ORS shortly after the complaint is filed. Id.  When a case is settled, she records the date when the ORS is required to be complaint and then revisits it. Id.

Defendant filed its Motion To Dismiss advancing several legally deficient and unfounded misleading arguments: namely,  (1) that the pleadings are insufficient;  (2) that plaintiff cannot have a cause of action unless she stayed at or  intended to book a room at the hotel.  For the reasons below, Defendant's arguments are without merit.

## II.    The Applicable Standard

Defendant's motion is based on Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6).

2

In instances where the jurisdictional challenge is under Fed. R. Civ. P. 12(b)(1), the issue is whether "the jurisdictional dispute is interwoven with the underlying merits" of the dispute. *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2nd Cir. 2013). In that instance, the District Court must apply the standards of Rule 56 (applicable to summary judgment) or to 12(b)(6) or leave that issue for trial. *Id*. In the case at bar, Defendant's challenges to Plaintiff's right to injunctive relief are inextricably intertwined with the merits of Plaintiff's claims for relief, which are based on 42 U.S.C. Section 12188. Thus, Defendant's challenges go to the very heart of the merits of Plaintiff's federal cause of action. For that reason, a credibility determination is inappropriate, as the Court must convert the motion to one of either 12(b)(6) or 56.

The standard applicable to Fed. R. Civ. P. 12(b)(6) is as follows:

> In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); see also *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

*Wood v. Byrd*, 2020 U.S. Dist. LEXIS 19838, *9 (S.D. N.Y. 2020).

The standard applicable to Fed. R. Civ. P. 56 is as follows:

> A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Accordingly, the

Court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); see *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).

*Kinney v. Artist & Brand Agency LLC*, 2015 U.S. Dist. LEXIS 160465, ** 33-34 (S.D. N.Y. 2015).

In accordance with the above caselaw and standards, a credibility determination is improper and all pleadings and statements made by Plaintiff must be taken as true and all reasonable inferences be made in her favor.

## III.   The Pleadings Are Sufficient

Many courts have upheld the sufficiency of virtually identical pleadings and have rejected challenges against their sufficiency. See, e.g., *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897, DE 34 (S.D. Fla. 6/6/19); *Kennedy v. Patel Brothers, Inc.*, 19-60613, DE 23 (S.D. Fla. 6/6/19); *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19)(denying motion to dismiss); and *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19)(denying motion to dismiss).

Numerous courts have also considered such allegations as sufficient when they granted default judgment. See *Kennedy v. Yaish & Tish Ltd., LLC*, 19-cv-61992-RAR, DE 14 (S.D. Fla. 9/27/19); *Kennedy v. Londamerican Real Estate Ltd.*, 19-cv-61228-SMITH/VALLE, DE 18 (S.D. Fla. 8/21/2019); *Kennedy v. Guruhari Hospitality*, LLC, 0:19-cv-61139-WPD, DE 18 (S.D. Fla. 7/11/2019); *Kennedy v. Moreno*, 19-60550-CIV-ALTMAN, DE 20, (S.D. Fla. 6/26/2019); *Kennedy v. Pacifica Tampa Ltd Partnership*, 5:17-cv-442-JSM-PRL, DE 7 (M.D. Fla. 1/25/18).

*Kennedy v. Fernandez*, 19-60876, DE 18 (S.D. Fla. 6/11/2019);  *Kennedy v. Astoria Hotel Suites,*

*LLC*, 19-cv-60160, DE 17 (S.D. Fla. 3/22/19); *Kennedy v. Dockside View, LLC*, 2:18-cv-14444-

KAM (S.D. Fla. 1/19/19); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC,

DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla.

1/30/19); *Kennedy v. Terrace Park Suites, LLC*, 0:19-cv-60012-DPG (S.D. Fla. 3/21/19);

*Kennedy v. Shree Ram Jalaram, Inc.*, 19-60708, DE 13 (S.D. Fla. 4/18/2019); and *Kennedy v.*

*Rushi Hospitality LLC*, 18-cv-62259-WPD, DE 26 (S.D. Fla. 2/6/19).

Initial pleadings in Title III ADA actions are governed by the liberal pleading

requirements of Fed. R. Civ. P. 8(a).  This Rule requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief," in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests,'‘  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). See  also  *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 477 (6th Cir. 2007) ("under

the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims

which have not had the benefit of factual discovery."); *Thomas v. Unknown EBY*, 481 F.3d 434,

440 (6th Cir. 2007).

In order to state a claim under the ADA, a Plaintiff must allege that she "(1) has a

disability; (2) is a qualified individual; and (3) was unlawfully subject to discrimination because

of [her] disability."  *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278,1285

(11th Cir. 1997).

Defendant's challenge regarding the sufficiency of the pleadings is primarily based on

Defendant's mistaken interpretation of the law.  However, Plaintiff's complaint has amply pled a

cause of action consistent with the requirements of Fed. R. Civ. P. 8(a).

Defendant cites *Harty v. Nyack Motor Hotel, Inc.*, No. 19-CV-1322, 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020). However, Plaintiff respectfully submits that the *Nyack Motor Hotel* case is flawed, as it conflates claims involving commercial website discrimination against vision impaired with the claims at issue herein. In vision impaired cases, the basis of the suit is that the blind plaintiff is not able to navigate a commercial website because it is not compatible with screen reader software. By contrast, in a hotel online reservation case, navigability is not the issue. Rather, the basis of such claims are that the hotel's online reservations system simply did not identify its accessible rooms, it did allow for booking of accessible rooms, and did not provide the information required so that disabled persons could determine whether or not the features at the hotel are accessible. In the case at bar, the Plaintiff was not "impeded in his navigation" as the Nyack opinion mistakenly required. Rather, the information required by the Regulation was missing.

Moreover, and as set forth below, Defendant's sufficiency challenge is largely based on its own fundamental misrepresentation of the law as it pertains to hotel online reservations systems.

Therefore, Plaintiff submits that his cause of action is sufficiently pled.

## IV.    The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement

The entire foundation of Defendant's main argument is misplaced because Defendant fails to understand the locus of the injury. Defendant's entire theory is based on the mistaken proposition that the plaintiff must have and will suffer injury AT the physical property. All the cases it cites involve discrimination at physical properties.

6

For example, on p. 5 of its Memorandum, Defendant cites *Feltzin v. Clocktower Plaza Props., Ltd.*, 2018 U.S. Dist. Lexis 32686 (E.D.N.Y. 2018). However, this case is unsupportive of Defendant's arguments, as it involved a plaintiff's encounter with discriminatory violations he encountered at the defendant's physical property. Thus, the distance between the plaintiff's home and the defendant's services, programs, or activities were relevant. By contrast, in the case at bar Defendant's online reservations system is a "service" which is encountered in Plaintiff's own home. On p. 5 of its Memorandum, Defendant misapplies the four part test: which include the distance between Plaintiff's home and the physical property. In this regard, Defendant cites only cases involving encounters with discrimination located at physical property locations and does not cite any cases involving website discrimination. In physical property cases, the locus of the injury is at the physical property. By contrast, in website discrimination cases, the locus of the injury is in the plaintiff's own home.

Defendant cites no authority applying such a test to website cases where the discrimination is encountered in the Plaintiff's own home. One court in this District has rejected this argument. See *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, at pp. 30-31, Exhibit B, at 31-32 (reasoning that the traditional four factor test was designed for physical barriers and is "very challenging to be applied here" as the plaintiff will again encounter discrimination in the "comfort of her own home"). One court has held that the Proximity test not applicable to websites because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 2:16-cv-01898, DE 107, p. 9 n.1 (W.D. Pa. 04/21/17).  Several courts have held the proximity factor is inapplicable applicable to hotels because, by their very nature, they cater to distant

travelers. *Access 4 All, Inc. v. 539 Absecon Blvd.*, 2006 WL 1804578 (D.N.J. 2006); *Access 4 All, Inc. v. Wintergreen Commer. P'ship, LTD*, 2005 U.S. Dist Lexis 26935, *11 (N.D. Tex. 2005); *D'Lil v. Best Western Encina Lodge & Suites*, 415 F.Sup.2d 1048, 1056 (C.D. Ca. 2006) ("Generally one does not stay in a hotel that is close to one's residence").

Much of Defendant's argument is based on the misguided notion that Plaintiff must either have visited or intend to visit the physical hotel premises and/or must have been denied goods and services "at" the physical hotel.

According to Defendant's incorrect narrative of the law, a disabled plaintiff only has a cause of action if they visited or will visit Defendant's physical property and were denied equal access to goods or services provided "at" the physical property. This fundamental mischaracterization of the applicable law is the central foundation of Defendant's motion. Although the Defendant cites no hotel online reservations cases on point, numerous courts have addressed the legal issue  whether a disabled person who encounters an ORS that fails to comply with the Regulation has suffered an injury-in-fact, or whether he must ADDITIONALLY intend to book a room at the hotel before he has a cause of action, or if they can only have a cause of action after they encounter physical violations located at the hotel. Another way to put it is whether the discriminatory ORS must somehow impede the disabled person's access to goods and services **at** the physical facility before it is actionable under the ADA. Hereinafter ("physical nexus requirement").

First, it has been recognized that testers have standing under Title III of the ADA.  *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013).  See also

*Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2ⁿᵈ Cir. 6/29/2011)(Summary

Order)(holding that Harty's intent to return as a tester contributes to satisfying his pleading

requirements). As such, the disabled person's motive is entirely irrelevant because all that

matters is whether they encountered discrimination as defined by plain words the Statute.

*Marod*, *passim*.

It is paramount that the plain words of the Statute and duly promulgated Regulation

govern.  Several general maxims apply. "Statutory interpretation always begins with the plain

language of the statute,' which [the court] consider[s] in 'the specific context in which that

language is used, and the broader context of the statute as a whole.'" *In re Ames Dep't Stores,*

*Inc.*, 582 F.3d 422, 427 (2d Cir. 2009);   *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009).  If

the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147

(2d Cir. 2010). "Our duty is to say what statutory language means, not what it should mean, and

not what it would mean if we had drafted it." *Marod Supermarkets, Inc.*, 733 F.3d at 1333-34

(addressing tester standing), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274,

2013 WL 4750549, at *10 (11th Cir. 2013).  "We are not at liberty to rewrite the statute to reflect

a meaning we deem more desirable.". *Marod*, 733 F.3d at 1334, citing  *Ali v. Fed. Bureau of*

*Prisons, 552 U.S. 214, 228 (2008)*.

In other words, an interpreting Court must look to the plain language of the Statute and

Regulation in analyzing whether a disabled person who encounters a discriminatory ORS has a

cause of action or whether they must ADDITIONALLY intend to book a room at the hotel or

ADDITIONALLY encounter discriminatory conditions located at the physical premises.  More

significantly, if such additional restrictive language is found elsewhere in the Statute, but not in

9

the provisions governing the case at bar, such exclusion is dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); see also *Patel v. McElroy*, 143 F.3d 56, 60

(2nd. Cir 1997).

Plaintiff's claims are based on the following:

42 U.S.C. Section 12182(a) provides:

> (a) General rule
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of

Justice ("DOJ").[1] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter

"Regulation"), which provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -

---

[1]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

The Statute and Regulation are directly on point and unambiguously spell out all the elements of a cause of action. Failure of an online reservations system to comply with the requirements of the Regulation constitutes a failure to comply with 42 U.S.C. Section 12182(b)(2)(A)(ii). This qualifies as "discrimination" and is thus a violation of 42 U.S.C. Section 12182(a) and is thus fully actionable without more required.

A website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).   42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..." Because the websites are a "service", all that is required is that a disabled person be deprived of full and

equal enjoyment of this "service".[2]  Once that occurs, all the elements are satisfied to establish a cause of action. Conspicuously absent from the Regulation or the Statute is any requirement that the disabled person must additionally intend to be a customer or, in this case, book a room and stay at the hotel as a requirement for a cause of action.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod*, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction.

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was not present in the plain language of Subsection 12182(a). Therefore, both courts held, the

_____

[2]An online reservations system may also be characterized as a  privilege or advantage, also referenced in Subsection 12182(a).

requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed.

In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, but missing from others that governed the case before it. Specifically, Section 12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at issue in *PGA Tour*, namely 12182(a)[3] **did NOT** contain this limiting language. Therefore, the Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language contained in one Subsection of Title III cannot be applied to other Subsections of the same statute where that language is missing.

This "client or customer" analysis regarding was similarly applied by the *Marod* Court when it held that testers have standing, that they do not need to be a client or customer, and that their motive is irrelevant. 733 F.3d at 1333-34. However, the *Marod* Court additionally relied heavily on other similar opinions involving different language and applying the rules of statutory construction.

In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes.

---

[3]Subsection 12182(a) is the same Subsection that governs the instant action.

Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the

*Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

> The Supreme Court concluded that a black tester who was misinformed about the availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id*.
>
> In considering the tester's standing, the Supreme Court in Havens Realty explained that the "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 373, 102 S. Ct. at 1121* (alterations adopted) (quoting *Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975))*; see also *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1148 n.3, 35 L. Ed. 2d 536 (1973)* ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at 373, 102 S. Ct. at 1121*.

*Marod*, 733 F.3d at 1330. The Court also noted:

> The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]
>
> The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374*; *102 S. Ct. at 1121*. The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty, 455 U.S. at 374*; *102 S. Ct. at 1122*.

*Marod*, 733 F.3d at 1330-31 (emphasis added).

The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain

language of the statute gave a right of action to a civil rights tester who encountered

**discriminatory  information** about an apartment **even though they did not intend to rent the**

**apartment**. In other words, it was not necessary that the person intended to rent or visit the physical location. Rather, encountering the discriminatory information was sufficient.

In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id*.

In *Havens Realty*, the Supreme Court applied the same rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection of the applicable statute, but missing from the subsection that applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374.

In *Marod*, the Court stated:

These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff Houston's lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.

The ability or inability to obtain information in violation of a statute was recognized as an actionable injury by the Supreme Court in *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a

statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

524 U.S. at 21.

In *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2nd Cir. 1993), the Second

Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's

placement of display advertising for residential apartments in the newspaper because all the

models portrayed in the ad were white. In this regard, the Second Circuit followed *Havens Realty*

and stated as follows:

> There is no significant difference between the statutorily recognized injury suffered by the tester in Havens Realty and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. [citation omitted.]  Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained to find that the individual plaintiffs had standing to bring this action in federal court.

6 F.3d at 904.

Under the above cited cases, an ADA plaintiff does not have to be a client or customer or

a bona fide customer and his motive or intent are entirely irrelevant. All that is required is that

they encounter discrimination within the plain meaning of the words of the statute. This includes

discrimination in the form of information without any visit or intent to visit the property which is

the subject of that information. There is no additional requirement that they intend to use or visit

the physical property, unless the applicable statutory provisions expressly say so. Thus, there no

room left to reach an interpretation that a disabled plaintiff must intend to book a room at a hotel,

or actually visit the hotel, before they can have a cause of action for a discriminatory online

reservations system. Any language imposing such a requirement is completely absent. Neither the

16

general provision of 42 U.S.C. Section 12182(a), the definition of "discrimination" under 42

U.S.C. Section 12182(b)(2)(A)(ii), nor the Regulation contain any such requirement. To the

contrary, failure by the Defendant to make its online reservations system compliant with the

Regulation constitutes "discrimination" within the meaning of Subsection 12182(b)(2)(A)(ii)**.**

This then is prohibited by the general provision of Subsection 12182(a) because the disabled

person is deprived of full and equal access to a service. It does not then matter whether an ADA

tester intended to do anything more than what is set forth in the statute. The words "no individual

shall be discriminated against..." means that **any** disabled person who encounters a

discriminatory service has a cause of action, regardless of whether they are a tester and regardless

of their intent.

To the extent there is any room for doubt, there is in fact **another** subsection of the

Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C.

Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities *from* fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

This Subsection was the subject of an Eleventh Circuit decision in *Rendon v. Valleycrest

Prods.*, 294 F.3d 1279 (11th Cir. 2002), which involved a telephone screening process for

potential contestants on Who Wants To Be A Millionare. The discriminatory telephone screening

process ("eligibility criteria"), only became actionable if it additionally screened out disabled

persons "from fully and equally enjoying any goods, services..." In that Subsection, the word

"from" is critical because its insertion in the Subsection means that a disabled person's encounter

with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from either the Statute's Subsections or the Regulation that govern online reservations systems.  Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of  ... services, ..., privileges, advantages..."

Thus, the plaintiff has standing and there is no additional requirement that they actually visit the hotel or intend to book a room.

At least three courts have specifically rejected the physical nexus argument. In. Gold Sun Hospitality, at pp.  30-31, Exhibit B, a court in the Middle District of Florida rejected an identical physical nexus argument, holding that the plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website.  Similarly, in *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27 (S.D. Fla. 1/2/2020), a court in the Southern District likewise rejected the physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an injury-in-fact and an intent to the return to the website in the future.

See also *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20)(denying motion to dismiss filed at DE 39 premised on physical nexus

argument).

Numerous courts held that injury in hotel website discrimination occurs in the comfort of the plaintiff's own home and that the disabled person's encounter with the discriminatory website constitutes injury and satisfies the injury-in-fact requirement.  See *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897-WPD, DE 34 (S.D. Fla. 6/6/19)(recognizing that the plaintiff suffered an injury-in-fact when she encountered defendant's discriminatory website, the injury was caused by defendant's failure to provide the requisite information on the website, and the injury will likely be redressed if injunctive relief is granted requiring defendant to modify its website to comply with the ADA's requirements); *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018) (holding plaintiff's allegations that she visited defendant's website but was unable to independently ascertain the accessible features were sufficient to allege an injury-in-fact); *Kennedy v. Floridian Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018) ("[T]he Court finds that Plaintiff has shown that she suffered an injury-in-fact when she encountered the ADA violations on the Website.");  *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457  (S.D. Fla. 2018)("[I]f Defendant's Website is non-compliant with § 36.302(e)(1), Plaintiff has suffered an injury-in-fact.");  *Gold Sun,* at pp.  30-31, (M.D. Fla. June 18, 2018)(plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website); *Laufer v. The Flagler Of St. Augustine, LLC*, 1:19-cv-268, DE 12 (N.D. Fla. 4/9/20). In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), a court held that "visiting the website suffices" and that a "plaintiff's inability to fully and effectively use an establishment's website constitutes an

injury-in-fact."  Numerous additional  cases support the proposition that viewing a discriminatory commercial website constitutes injury. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018) ("Plaintiff suffered a concrete injury  when he attempted to access the website but was unable to fully and effectively utilize it."); *Jones v. Family First Credit Union,* No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018) (explaining that the inability to determine a public accommodation's accessibility information via its website constitutes an injury-in-fact because it is "direct exposure to differential treatment of a person with a disability."); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717 (D. Ariz. 2017); *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017).

In short, the Plaintiff's encounter with the discriminatory website IS the injury and there is simply no additional requirement that they visit the hotel or intend to book a room at the hotel. Indeed, the encounter with the prohibited discrimination occurs in the plaintiff's own home.

### V.    Plaintiff's NYSHRL Claim

Defendant also moves to dismiss Plaintiff's claims under NYSHRL, N.Y. Exec Law § 296(2)(a). The basis of Defendant's motion in this respect are that Plaintiff's NYSHRL claims should be dismissed for the same reasons applicable to Plaintiff's federal ADA claims. For the same reasons Plaintiff's ADA claims should not be dismissed, Defendant's motion must be denied regard his state law claims.

X.      **Conclusion**

For the foregoing reasons, Defendant's Motion is without merit and should be denied.

Respectfully submitted,

**Thomas B. Bacon, P.A.**
5150 Cottage Farm Rd.
Johns Creek, GA 30022
ph. (404) 276-7277
gillespie.tristan@gmail.com
New York Bar ID No. 4443461

*s/ Tristan W. Gillespie, Esq.*
Tristan W. Gillespie, Esq.