## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**DEBORAH LAUFER,**
          **Plaintiff,**

**v.**                                                  **Case No: 20-366**

**FIRST STREET GROUP, LLC,**
          **Defendant.**

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
## IN OPPOSITION TO MOTION TO DISMISS

Plaintiff, by and through undersigned counsel, and pursuant to Order of Court, hereby

submits this Memorandum in Opposition To Defendant's Motion To Dismiss, filed at DE 12.

**I.      Spokeo v. Robins Supports Plaintiff's Standing**

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)

supports the conclusion that Plaintiff has standing in this case. In *Spokeo*, the Supreme Court

held that improper information which violated the Fair Credit Reporting Act did not, by itself,

constitute injury.  However, the *Spokeo* Court specifically recognized the existence of statutes

which provide that the dissemination of improper information constitutes an injury with nothing

more required. In this regard, the *Spokeo* Court stated:

> Just as the common law permitted suit in such instances, the violation of a
> procedural right granted by statute can be sufficient in some circumstances to constitute
> injury in fact. In other words, a plaintiff in such a case need not allege any additional
> harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*,
> 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of
> voters' "inability to obtain information" that Congress had decided to make public is a
> sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491
> U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy
> organizations'failure to obtain information subject to disclosure under the Federal
> Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to

1

sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court,

in turn, referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*,

but instead acknowledged the body of law to which *Havens Realty* belongs.[1]  Indeed, the

concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553

(Thomas J., Concurring). *Havens Realty* was also recognized in Spokeo's dissent. 136 S.Ct. At

1555 (Ginsburg, J. Dissenting).

A helpful analysis can be found in the Seventh Circuit's opinion in *Carello v. Aurora*

*Policemen Credit Union*, 930 F. 3d 830, 832-33 (7th Cir. 2019), which recognized the existence

of strictly informational injury created by Congress. This occurs when the defendant fails to

provide information to a plaintiff that a law entitles him to obtain and review for some

substantive purpose. *Id*. at 835. "Once that occurs, there is no additional requirement that the

plaintiff suffer any additional harm beyond his or her failure to receive the information that the

law renders subject to disclosure. *Id.*, citing *Spokeo*.  Specifically, the *Carello* Court stated:

> An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain  and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21,

---

[1]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

24-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas [v. Madison Ave., Assoc.*, 926 F.3d 329,] 337-38 [(7th Cir. 2019)] ("[Akins and Public Citizen] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

*Spokeo* involved a statute which required that the defendant provide accurate information to third parties. By contrast, the ADA and Regulation require that the Defendant's online reservations service provide certain required information directly to the Plaintiff, in addition to the option to book an accessible room in the same manner as for non-accessible rooms. Failure to do so gives rise to the very sort of informational injury recognized as actionable. In short, the Plaintiff's encounter with the discriminatory website IS the injury and there is simply no additional requirement that they visit the hotel or intend to book a room at the hotel.  Indeed, the encounter with the prohibited discrimination occurs in the plaintiff's own home.

Although not an ADA case, the Supreme Court's decision in *Bates v. United States*, 522 U.S. 23 (1997) is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30.

Numerous Circuit Courts have followed *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) in recognizing informational injury. *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898,

904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985)(tester who had no intention of renting apartment had standing to sue for receiving misleading information from defendant about apartment availability); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *Tandy v. City of Wichita*, 380 F3d 1277, 1290 (10th Cir. 2004)(Title II ADA tester has standing to sue for failure to provide required information); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure).

## II.      The Third Party ORS Providers Are Not Indispensable Parties

The Regulation imposes liability on Defendant for its discriminatory online system, even if operated through third parties.   28 C.F.R. Section 36.302(e)(1) (the "Regulation"), provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, **or through a third party** -

(Emphasis added.)

Thus, the Regulation is unequivocally clear and imposes liability on hotels which operate discriminatory reservations systems through third parties.  The DOJ, which promulgated this Regulation, issued guidelines on the subject at issue. In this regard, the DOJ stated:

> Hotels and organizations commenting on their behalf also requested that the language be

4

changed to eliminate any liability for reservations made through third parties, arguing that they are unable to control the actions of unrelated parties. The rule, both as proposed and as adopted, requires covered public accommodations to ensure that reservations made on their behalf by third parties are made in a manner that results in parity between those who need accessible rooms and those who do not.

      Hotels and other places of lodging that use third party reservations services must make reasonable efforts to make accessible rooms available through at least some of these services and must provide these third party services with information concerning the accessible features of the hotel and the accessible rooms. To the extent a hotel or other place of lodging makes available such rooms and information to a third party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible.

Guidelines for 28 C.F.R. Part 36, Nondiscrimination on the Basis of Disability in Public

Accommodations and Commercial Facilities, Exhibit A attached hereto, p. 133. Thus, it is

plainly clear that a hotel is directly liable for any failure of its online reservations system to

comply with the Regulation, even if operated through third parties. See *Parks v. Richard*, 2020

U.S. Dist. Lexis 127639, passim (M.D. Fla. 7/21//20)(hotel liable for discrimination through

third party sites).

      Moreover, the third party providers are not liable to the Plaintiff. At least one court has

rejected the argument that these are indispensable parties. See *Kennedy v. New Yorker Hotel*

*Miami, LLC*, 0:18-62897, DE 34, pp. 5-7 (S.D. Fla. 6/6/19).

      The DOJ's guideline addressed the Regulation's applicability to third parties. See

Plaintiff's Exhibit B, filed at DE 14-2. On this point, the DOJ states:

      In the NPRM, the Department sought guidance concerning whether this requirement should be applied to third party reservations services. Comments made by or on behalf of hotels, resort managers, and other members of the lodging and resort industry pointed out that, in most cases, these third parties do not have direct access to this information and must obtain it from the hotel or other place of lodging. Because third party reservations services must rely on the place of lodging to provide the requisite information and to ensure that it is accurate and

> timely, the Department has declined to extend this requirement directly to third party reservations services.

*Id*. p. 134.

By this language, the DOJ made clear that the Regulation does not impose liability on third party booking systems because they do not have direct access to the information required. This information is in the exclusive possession of the hotel and any failure to comply with the Regulation is the hotel's fault.

The Statute itself is devoid of any language that would give Plaintiff a right of action against the third parties. 42 U.S.C. Section 12182(a) only imposes liability on any person "who owns, leases (or leases to), or operates a place of public accommodation." The other third party providers do not fall within any of these categories. See *Huzar v. Groupon, Inc*., 2018 U.S. Dist. Lexis 126653, *9-11 (N.D. Ill, 2018)(applying this reasoning to hold that third parties cannot be liable to plaintiff).

Most importantly, these online reservations systems post information about the hotel that was provided exclusively by the Defendant. They had no other means of obtaining the information relevant to the hotel. By booking available rooms for the hotel, they ostensibly work in close integration with the Defendant's own system. Typically, hotels have direct access, with usernames and passwords) to their own hotel sites located with the third parties and upload the information themselves. The failure of those reservations systems to comply with the Regulation is solely the Defendant's fault.

Moreover, if Defendant claims that these third parties share the fault, then Defendant is free to add them as third party defendants for any breaches on their part. See Fed. R. Civ. P. 14.

III.     **The Holding In *Harty v. West Point Realty* Is Flawed**

6

Recently, one court ruled that a plaintiff lacks standing to sue under an ORS case. See *Harty v. West Point Realty, Inc.*, 7:19-cv-8800-VB, DE 29 (S.D. N.Y. 8/7/20). This case was appealed to the United States Court Of Appeals For The Second Circuit, No. 20-2672. The briefs have not yet been submitted in that case. Plaintiff submits that the *Harty* decision is based on reversible error for several reasons.

First, the *Harty* court refused to consider Harty's affidavit and therefore ignored the evidence submitted by the plaintiff that he intended to visit the area and needed to stay in hotels. *Id*. at 8-9. By contrast, this Court can consider Laufer's affidavit on the same point. Additionally, the court acknowledged that the plaintiff had pled that he intended to revisit the hotel's ORS to test it for compliance "and/or to utilize the website to reserve a guest room and otherwise avail himself of the ... accommodations of the Property." *Id*. p. 7. Despite this acknowledgment, the court then stated that: "The complaint's allegations, taken as true, suggest only that plaintiff intends to return to the online reservation systems to test for statutory violations of the ADA visà-vis 28 C.F.R. § 36.302(e)(1)." *Id*. at 7.  Thus, the *Harty* court refused to consider evidence and ignored the allegation that Harty intended to stay in area hotels. This stands in stark contrast to the present instance, where Laufer submitted an affidavit indicating her visits to New York and stay in hotels. DE 14-1, para. 5.

The *Harty* court also committed reversible error when it held that the allegations did not show the plaintiff's "plausible intention or desire to return" to the websites but for the barriers to access. *Id*. at 7. In this regard, the court made an improper credibility determination, in violation of the standards discussed in *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2nd Cir. 2013)(where the jurisdictional disputed is interwoven with the underlying merits, the court

must apply the standards of Rule 56 or 12(b)(6) and cannot make a credibility determination. Moreover, in contrast to the *Harty* case, Laufer presented an affidavit which explained her system of maintaining a list of all hotels she has sued, marking the dates she visits the ORS of each, then revisits the same shortly after the case is filed, and again when the time arrives for the hotel's ORS to be required to be compliant. DE 14-1, at para. 8. Under *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790, at *7 (M.D. Fla. 2020), such a system of rechecking suffices to establish standing on this point.

The *Harty* court also held that plaintiff failed to "set forth any allegations suggesting [Harty's] ability to" visit the websites. Id. at 7-8. In this regard, the court demonstrated a complete misunderstanding of the nature of ORS discrimination. This was not a claim based on compatibility with screen reader software, where a vision impaired individual thus has difficulty in reviewing a commercial website. By contrast, an ORS case involves the failure of a hotel to provide the information that is required by the Regulation. The ability to navigate the ORS is not relevant.

In *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2nd Cir. 1993), the Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. The Court recognized that the plaintiffs had no actual intent to rent an apartment. The Second Circuit followed *Havens Realty* and stated as follows:

> There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. [citation omitted.]  Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained

to find that the individual plaintiffs had standing to bring this action in federal court. 6 F.3d at 904. Thus, in *Ragin*, there was never an issue as to whether or not the plaintiff's were able to access or read the advertisement. The issue was solely based on the information presented in that ad.

At pp. 8-9 of its opinion, the *Harty* court misread *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019) as holding that intent to book a room is a requirement. However, the *Juscinska* court only noted in dicta that the plaintiff had the intention of booking a room. It never held that such an intent was required. Noting that the plaintiff intended to book a room is far different from holding that such intent is a requirement of the law.

The *Harty* court also misread *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202 (S.D.N.Y. 2019). In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he had filed 50 similar complaints regarding the websites of schools all over the country. 2019 U.S. Dist. Lexis 209202, at *29. The court addressed this argument as follows:

> Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in the near future  if he could visit their website" is present in many, if not all, of the other complaints. []. From this, Defendant urges the Court to intuit that this allegation, as it appears in the Second Amended Complaint, should be discredited.[]. If Plaintiff were to visit each of the schools named in those complaints, he would be forced to travel to 42 cities across 19 states. []. Doubting the feasibility of such an expansive college tour, Defendant argues that the Second Amended Complaint does not adequately plead an intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future." []
> Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark. Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended  to return to the Website, and the Court has found that this requirement is met. To the extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the

schools against which he has filed complaints. [] Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person.[]. The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.

*Id*. at. ** 29-31. Thus, regardless of whether or not the plaintiff intends to visit the subject property, the real issue is whether or not the plaintiff intends to visit the website.

## IV.    Recent And Other Decisions

Other courts have recently ruled on the matter of standing. In *Kennedy v. Italia, LLC*, 0:19-cv-61938-MGC, DE 35 (S.D. Fla. 8/10/20), another court rejected the argument made at DE 17 that the plaintiff must intend to book a room at the hotel..

In *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20), one court granted default judgment after an evidentiary hearing, finding that the plaintiff suffered discrimination when she visited the non-compliant ORS. The court additionally found that the plaintiff had standing because she visited the ORS both before and after the lawsuit was filed "for the purpose of assessing the accessibility features of the property and to ascertain whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. § 36.302(e)(1)." *Id.* at p. 5.

In *Kennedy v. Nisha Inc.*, 8:20-cv-367-TPB-CPT, DE 34, pp. 6-8 (M.D. Fla. 9/17/20), one court recently rejected the argument that a tester must intend to book a room at a hotel in order to have standing to sue for ORS violations. The court noted both public policy arguments weighing both in favor of and against such reasoning, but ultimately held that, "the weight of the law, as it currently exists, supports Plaintiff's argument as to standing." *Id*. at 8.

Other decisions, though not recent, also bear mentioning.

10

In *Gonzalez v. Bahar Corp.*, 2019 U.S. Dist. Lexis 58567, *6 (E.D.N.Y. 2019), one court in the Eastern District of New York stated that the issue is the plaintiff's intent to return to the website, rather than the physical property. The court stated: "Here, [plaintiff's] desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan* [*v. Defenders of Wildlife*, 504 U.S. 538 (1992)], [plaintiff] is not alleging an intent to return to a physical location, let alone a distant one.

In *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19), another court denied a motion to dismiss in a hotel website case, ruling that the pleadings were sufficient (with respect to nexus).

## V.     Laufer v. Arpan and Hernandez v. Caesar's License

In *Laufer v. Arpan, LLC*, 1:19-cv-200-AW-GRJ, DE 45 (N.D. Fla. 9/25/20), one court recently held that Laufer lacks standing unless she intended to book a room at the hotel. In *Hernandez v. Caesars Licence Co., LLC*, 2019 U.S. Dist. Lexis 172456 (D. N.J. 2019), one New Jersey court held that a plaintiff must intend to book a room in order to have standing to pursue a claim for ORS violations. For the reasons set forth in Plaintiff's Response, filed at DE 17, the *Arpan* and *Herndandez* decisions are fundamentally flawed.

## VI.     Laufer v. Mann Hospitality

In *Laufer v. Mann Hospitality, LLC*, 1:20-cv-620-JRN, DE 15 (W.D. Tex. 9/30/20), one court held that Laufer lacked standing to pursue her claims regarding a hotel's discriminatory ORS. The Mann decision is flawed in that it did not consider the applicable rules of statutory construction, informational injury, applicable Supreme Court precedent, or the overwhelming

number of decisions which upheld Plaintiff's right to sue. Rather the court relied primarily on the

Proximity Test (which considers a plaintiff's distance from the residence to hotel) and did not

consider that the locus of the injury was in the Plaintiff's own home.

**VII.    The Applicable Standards Regarding Accessibility Information**

The Regulation requires that a hotel's ORS "Identify and describe accessible features in

the hotels and guest rooms offered through its reservations service in enough detail to reasonably

permit individuals with disabilities to assess independently whether a given hotel or guest room

meets his or her accessibility needs[.]" 28 C.F.R. Section 36.302(e)(1)(ii). The DOJ promulgated

guidelines, attached hereto as Exhibit A, on the issue of the sort of information required. In this

respect, the DOJ stated:

> A number o these commentators pointed out that it can be difficult or impossible to
> obtain information about accessible rooms and hotel features and that even when
> information is provided it often is found to be incorrect upon arrival.

Part 36 Nondiscrimination on the Basis of Disability in Public Accommodations and

Commercial Facilities, at 77. These guidelines are also included as Appendix A to Part 36 to the

Regulation set forth at 28 CFR Part 36. The guideline further states:

> For hotels that were built in compliance with the 1991 Standards, it may be
> sufficient to specify that the hotel is accessible3 and, for each accessible room, to describe
> the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g.,
> two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and
> communications features available in the room (e.g. alarms and visual notification
> devices). Based on that information, many individuals with disabilities will be
> comfortable making reservations.
> For older hotels with limited accessibility features, information about the hotel
> should include, at a minimum, information about accessible entrances to the hotel, the
> path of travel to guest check-in and other essential services, and the accessible route to
> the accessible room or rooms. In addition to the room information described above, these
> hotels should provide information about important feaures that do not comply with the

1991 Standards[2]. For example, if the door to the "accessible room or bathroom is narrower than required, this information should be included (e.g. door to guest room measures 30 inches clear). This width may not meet current standards abut may be adequate for somw wheelchair users who use narroer chairs. In many cases, older hotels provide services through alternatieves to barrier removal, for example, by providing check-in or concierge services at a different, accessible location...

Id. at 78.

In other words, a hotel must identify which features are accessible and, with respect to features that do not comply with the applicable standards, they must describe the manner by which they deviate.

**The 1991 ADA Standards**

The 1991 Standards are published by the DOJ at ada.gov/1991ADAstandards_index.htm. These standards are also commonly referenced as "ADAAGs". The standards applicable to hotels are as follows: 4.2 space allowance and reach ranges; 4.3 accessible routes; 4.4 protruding objects; 4.5 ground and floor surface requirements; 4.6 parking and passenger loading zones; 4.7 curb ramps; 4.8 ramps; 4.9 stairs; 4.10 elevators; 4.11 wheelchair lifts; 4.12 windows; 4.13 doors; 4.14 entrances; 4.15 drinking and water coolers; 4.16 water closets; 4.17 toilet stalls; 5.18 urinals; 4.10 lavatories and mirrors; 4.20 bathtubs; 4.21 shower stalls; 4.22 toilet rooms; 4.23 bathrooms, bathing facilities and shower rooms; 4.24 sinks; 4.26 handrails, grab bars and tub and shower seats; 4.27 controls and operating mechanisms; 4.28 alarms; 4.30 signage; 4.32 fixed or built-in seating and tables. Further, chapter 7 addresses transaction counters (registration desk)

---

[2]At the time the Regulation was written, the 2010 ADA Standards had not yet been promulgated. Plaintiff submits that there are only a few differences. For instance, the 2010 ADA Standards added the requirement that hotel pools contain a pool lift. The standards are also arranged differently. In substance, however, the two standards are substantially identical with respect to hotels.

and chapter 9 addresses other requirements for hotels, such as the required number of accessible rooms and rooms with roll-in showers.

In sum, the hotel's ORS must indicate what features do comply with the 1991 standards and must also describe how other features do not comply.

## VIII.   Conclusion

For the foregoing reasons, Defendant's Motion is without merit and should be denied.

Respectfully submitted,

*/s/ Tristan W. Gillespie*
Tristan W. Gillespie, Esq.

THOMAS B. BACON, P.A.
5150 Cottage Farm Rd.
Johns Creek, GA 30022
Tel:  404.276.7277
gillespie.tristan@gmail.com

14